### AVERY *v.* BENTON.

[No. 20,172. Filed April 30, 1965.]

*Harold E. Ford,* of Madison, for appellant.

*Cooper, Cooper, Cooper & Cox,* of Madison, for appellee.

BIERLY, P. J.—This is an appeal from the Jefferson Circuit Court, of Jefferson County, Indiana, wherein appellant, Albert G. Avery, instituted this action to collect the reasonable value of his services as an attorney for appellee, Marjorie E. Benton.

Appellant, for his cause of action, alleged that he was duly admitted to practice before the Supreme Court of the State of New York and was duly licensed to practice law within the state of New York; and that from and after November 5, 1960 he performed certain legal services on behalf of appellee, all at her special instance and request and in reliance upon her promise to pay a reasonable fee for the service. Appellee answered in compliance with Rule 1-3. Upon the issues being properly closed, the trial court, without the intervention of a jury, found for the appellee and against the appellant and entered

consistent judgment thereon. Appellant prosecutes this appeal from the overruling of his motion for a new trial, in which he contended that the decision of the court is not sustained by sufficient evidence and is contrary to law.

Appellee has failed to file a brief in support of the trial court's decision or controverting the alleged errors complained of by the appellant. Such neglect on the part of appellee to file a brief controverting the errors complained of by appellant is tantamount to a confession of errors and this court may reverse if appellant's assignment of errors and brief make an apparent or *prima facie* showing of reversible error. *Ellet* v. *Ellet* (1965), 137 Ind. App. 96, 205 N. E. 2d 555; *Young et al.* v. *Schreiner* (1959), 130 Ind. App. 39, 161 N. E. 2d 611; *Mucker, Admr., etc.* v. *Public Serv. Comm. of Ind.* (1959), 129 Ind. App. 455, 157 N. E. 2d 308.

In justice to appellee the record shows that on January 21, 1965 an affidavit entitled "Petition for Leave to File Appellee's Brief After Expiration of Time", was filed, which petition was considered by the court, but since the rules are binding on the court as well as the litigants, said petition was denied by this court.

The elements of a prima facie case rest in the substantive law of the various subjects embraced within a given litigation. The proof required has been defined by a series of decisions so that the establishment of a common prima facie case results in a formula gathered from the expressions of courts over a period of years.

Each cause of action has a background of judicial limitation and exception.

The only question for our determination is whether

the appellant's assignment of errors and brief make a prima facie or apparent showing that the decision of the court is contrary to law.

The facts as revealed by the record show that appellant is a practicing attorney in the state of NewYork. He first became acquainted with appellee in May of 1953. Appellee at this time was engaged to be married to Russell Benton and Russell Benton recommended that she employ appellant to represent her in pending litigation. Appellant represented appellee in this protracted litigation for six years in the appellate courts of two states. This matter eventually culminated in 1959 in a lump sum alimony judgment wherein appellee realized about $33,000.

In June of 1953 appellee requested appellant to set up an arrangement whereby she could receive the income from certain stock which had been given by her mother-in-law, Mrs. Keck, to her three children, Peter, Judith and Nancy, for their support, maintenance and education. Mrs. Keck executed the original trust agreement in 1943 and transferred three (3) shares of Scott, Foresman and Company stock, one share for each child of appellee. The trust instrument provided for the income from the trust to go to the children for their support, maintenance and education until they reach the age of 25 years, at which time the trustee was directed to transfer, assign and pay over the respective fund to each child.

In 1951 the stock split 50 for 1. The 1953 agreement, which forms the background of this litigation, was an assignment by the two daughters, Judith and Nancy, of their right to receive income under the 1943 trust to the respective dates of 1954 and 1955 when each attained the age of 25 years. Further, it provided a declaration of a new trust, effective when each

daughter became 25, whereby appellee would receive the income for the rest of her life and the stock thence to be divided between the two daughters, or their issue, on her death. Appellee was named trustee under both this trust agreement and the original.

In October of 1960 appellee received a letter from one Harry A. Fischer, Jr., of Chicago, Illinois. Mr. Fischer represented that appellee's daughter, Judith, acting for herself and on behalf of her sister, Nancy, had consulted him as to their rights with regard to certain shares of Scott, Foresman and Company, which appellee was then holding. Mr. Fischer stated that after an examination of the Deed of Trust of 1953 he was of the opinion that a court of law would declare the instruments to be null and void and of no legal effect. He further suggested that in the event the parties are unable to reach an amicable settlement, it would be necessary to file suit in a court of competent jurisdiction in order to protect the interests of the daughters. About this time the stock had split 40 for 1 and the new certificates, as it was later determined, were due to be issued the last part of November.

Appellee's husband, Russell Benton, forwarded the letter from Mr. Fischer to appellant and inquired as to whether appellant had any files on this matter and how the issue could be re-opened. Appellant replied, on October 31, 1960, to Russell Benton's letter, stating that his files on the matter were in storage in Vermont where he was going in about two weeks. On the same day appellant wrote letters to Alan M. Foresman, Theron T. Chapman, president of Scott, Foresman and Company, Harry A. Fischer, Jr., and a second letter to Russell Benton. Appellant, on November 1, 1960 received a reply letter from Harry A. Fischer, Jr., wherein he stated that he had heard from Mr. Eugene Cooper, of Madison, Indiana, who, he assumed, was

acting on Mrs. Benton's behalf in this matter. Appellant also opened negotiations with the Harris Trust & Savings Bank of Chicago, transfer agent for Scott, Foresman and Company. Appellant secured his files from Vermont and prepared a trial brief which could be used, if necessary. He continued to write numerous letters to Russell Benton. Some time in the latter part of November, the new certificates were issued to appellee and the breach between appellee and her daughters was evidently healed. On January 6, 1961 appellant wrote appellee for the first time and submitted his bill for the services alleged to have been performed. Upon failure of appellee to respond to appellant's demand for payment, this action followed.

Appellant argues that the agency relationship between husband and wife is governed by the same rules which apply to any other agency and that the authority of the husband to act on behalf of the wife must be implied, not merely from the marital relationship but from the acts and conduct of the parties. He contends that in view of the facts shown, it is undeniable that Russell Benton was clothed with *apparent* authority to act for and on behalf of his wife and that the many commmunications between appellant and Russell Benton definitely established an attorney-client relationship.

The condensed recital of evidence as found in appellant's brief affirmatively shows that appellant did not rely upon any apparent authority with which Russell Benton might have been clothed.

From October 31, 1960 to January 6, 1961, when appellant submitted his bill, appellant wrote several letters to Russell Benton. In letters dated November 2, 1960, November 3, 1960, November 4, 1960, November 7, 1960, November 8, 1960 and December 2, 1960,

appellant requested a letter of authorization from appellee agreeing to pay his reasonable fees. In the letter of November 3, 1960 appellant stated:

> "Under Indiana law a husband is not liable for his wife's expenditures respecting her separate property. Any arrangements for compensation with me must, consequently, be made by Marjory herself, or at least she must approve in writing any understanding reached with you for her benefit."

It appears to us that in his own testimony appellant is adversely affected by his answers to questions on direct examination, to-wit:

> "Q. And Marjorie had not then employed you at the time you wrote this letter? (November 3, 1960—our reference).
>
> "A. I understood she had. I had been working —
>
> "Q. Why did you write this letter then, Mr. Avery, stating that you could not be employed by her except for her approving it?
>
> "A. I wanted to have no question about it. We had had a dispute once before.
>
> "Q. You had a dispute with her before, what does that mean?
>
> "A. I had a dispute with Benton and it was settled very quickly and we assumed our —

Appellant, after testifying he had drawn a trust agreement for $250 and had secured $33,000 alimony for Marjorie Benton and been paid six or seven thousand dollars by appellee, testified further:

> "Q. You wrote this letter on November 2, which was prior to the one I just read from (letter Nov. 3). I would accordingly like some arrangement from Marjorie for my compensation as regards my assistance on these two matters that are of such big importance to her.
>
> "A. Yes, I wrote that letter.

"Q. And you didn't have any arrangements for pay with her at that time? Or compensation?

"A. No, we hadn't agreed on any compensation.

"Q. You knew at the time that you were not employed, didn't you?

"A. No, I did not, I started employment the moment I got Benton's letter to help us on this thing.

"Q. Why did you write this letter of November 4?

"A. I wanted to clarify my future status on the matter, that is I went to work as soon as I got Fisher's letter that he was going to attack this trust.

"Q. Did you ever receive written authorization from Marjorie for the fees? For your compensation?

"A. I did not.

After testifying he received no response from Marjorie Benton to a letter sent her enclosing his bill nor a telephone call, Avery further testified:

"Q. You have this paragraph to Russell Benton in a letter of November 7: 'I am nearing 57 years of age and do not intend to spend the rest of my years on any such clumsy and expensive procedure for the benefit of Indiana's lawyers.' Remember writing that?

"A. I wrote that, yes.

Pertinent parts of the testimony by Marjorie E. Benton, appellee, in reference to the question of her denial that she had employed Avery as her counsel, are as follows:

"Q. Did you ever at any time employ Mr. Avery as your attorney in October, November or December of 1960, and January of 1961?

"A. I did not.

"Q. Did your husband, Russell Benton, have any authority from you to employ Mr. Avery as an attorney in this matter?

"A. He did not.

"Q. Did the matter involved in these proceedings involve only you and your separate property?

"A. It did.

"Q. Whom did you employ in this matter?

"A. Mr. Eugene Cooper.

"Q. Why did you specifically not want to employ Mr. Avery?

"A. Well, in 1953, when this trust was originally set up, my son also had some of this stock and he did not want to put it into a trust and Mr. Avery wanted to sue my son in Mexico City and I wouldn't hear of it, and I wouldn't have him do anything in connection with my children."

If there were a contractual relationship existing between appellant and appellee in the capacity of attorney and client in regard to this matter, it must rest, as a basis, on an expressed, or implied contract, or on proof of appellant's authority to act for or in behalf of appellee.

The tenor of all the correspondence heretofore set forth and the oral testimony of appellant and appellee affirmatively indicates that appellant was not employed by appellee, and, further, he did not rely on any purported agency between appellee and her husband.

By evaluating only the evidence of probative value as set forth in appellant's brief, which included testimony of appellant and appellee, and, also, the voluminous correspondence admitted into evidence as exhibits, we are of the opinion that appellant has failed to demonstrate the essential elements necessary or requisite to make a prima facie showing of reversible error by the trial court.

Appellant in his assignment of errors and brief, having failed to establish a prima facie showing of

reversible error, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

Hunter, Mote and Smith, JJ., concur.

NOTE.—Reported in 206 N. E. 2d 375.